Stephen P. Wasnok and Mary Alice Wasnok v. Commissioner.
Wasnok v. Commissioner
Docket No. 1268-70SC.
United States Tax Court
T.C. Memo 1971-6; 1971 Tax Ct. Memo LEXIS 327; 30 T.C.M. (CCH) 39; T.C.M. (RIA) 71006; January 11, 1971, Filed Stephen P. Wasnok, pro se, 712 W. Rosslynn Ave., Fullerton, Calif.Norman H. McNeil, for the respondent. SACKS Memorandum Findings of Fact and Opinion SACKS, Commissioner: Respondent determined deficiencies in the income tax of petitioners for the taxable years and in the amounts set forth below: Petitioner
Year
Amount
Stephen P. Wasnok
1967
$195.70
Mary Alice Wasnok
1967
158.66
Stephen P. and Mary Alice Wasnok
1968
54.46
*328 The sole issue for decision is whether petitioners' disposition of certain real property at a loss constitutes an ordinary loss fully deductible in 1965, the year in which the loss was sustained, or a capital loss, deductible as a loss carryover in 1967 and 1968. Findings of Fact Most of the facts have been stipulated by the parties. Their stipulation, together with attached exhibits, is incorporated herein by this reference. Stephen P. and Mary Alice Wasnok, sometimes hereinafter referred to as petitioners or as Stephen and Mary, are husband and wife who resided in Fullerton, California at the time of the filing of their petition herein. Their separate income tax returns for the taxable year 1967 and their joint income tax return for the taxable year 1968 were filed with the district director of internal revenue, Los Angeles, California. In 1960 petitioners were residing in Cincinnati, Ohio. Sometime during that year they purchased a home there located at 5654 Sagecrest Drive, hereinafter referred to as the Sagecrest property. A substantial portion of the purchase price of this property was borrowed on a promissory note secured by a first mortgage on the property from Spring *329 Grove Avenue Loan and Deposit Company (hereinafter referred to as Spring Grove Loan Co.). Early in 1961 petitioners decided to move to California. They listed the Sagecrest property with its builder for sale, but without result since the market at the time was extremely poor. Finally, on June 15, 1961 petitioners leased the property for a monthly rental of $225.00 and thereafter departed for California. Between June 15, 1961 and May 7, 1965 petitioners leased the Sagecrest property to various tenants at an average rental of $200.00 per month. Such tenants were located by advertising the property for rent in Cincinnati newspapers and by referrals from former neighbors. During this period petitioners on two occasions listed the property for sale with brokers, in each case, however, for only a ninety day period of time. Neither listing generated an offer for more than the amount due on the mortgage. By 1965 petitioners found themselves unable to continue payments due on their note on the Sagecrest property to Spring Grove Loan Co. Spring Grove thereafter notified petitioners that they would either have to deed the property back or the company would have to institute foreclosure *330 proceedings. On May 7, 1965 petitioners 40 executed a deed conveying their interest in the Sagecrest property to Spring Grove Loan Co. in satisfaction of the then balance due on their note in the amount of $24,421.04. For the taxable years 1961 through 1964 petitioners filed federal income tax returns reporting thereon rental income and claiming various expenses, including depreciation, on the Sagecrest property. Their return for 1961 was examined by the Internal Revenue Service and the cost basis of the land and improvements was agreed upon in the amount of $32,729.70. Total depreciation on the improvements claimed and allowed for the taxable years 1961 through 1964 was $4,697.42. Petitioners did not file federal income tax returns for the taxable years 1965 and 1966 on the premise that no returns were required because no tax appeared to be due. For 1965, however, petitioners had gross income in the amount of $5,603.21 and for 1966, in the amount of $3,180.00. On their separate returns for the taxable year 1967, petitioners for the first time each claimed a capital loss carry-forward deduction in the amount of $1,000.00 which was predicated upon their disposition in 1965 *331 of the Sagecrest property to Spring Grove Loan Co. Thereafter, on their joint return for 1968, petitioners claimed a further capital loss carry-forward deduction of $389.00, computed as follows: Cost of Sagecrest property
$32,729.70
Less: depreciation taken 4,697.42
Adjusted basis
$28,032.28
Sale on May 7, 1965 24,421.04
Capital Loss
$ 3,611.24
Claimed in 1967 (separate return) 2,000.00
Sub-total
1,611.24
Claimed in 1968
[1] $ 389.00
Balance to carry-over $ 1,222.24
In his notices of deficiency, respondent disallowed to petitioners the claimed capital loss carry-over deductions for the taxable years 1967 and 1968 on the ground that the loss involved was an ordinary loss deductible in the year sustained (1965) rather than a capital loss subject to the carry-over provisions of the Internal Revenue Code of 1954. Petitioners' disposition of the Sagecrest property at a loss constitutes an ordinary loss fully deductible in 1965, the year in which the loss was sustained and not a capital loss. Opinion It is petitioners' position herein that the Sagecrest *332 property was a capital asset in their hands, and that its disposition at a loss resulted in a capital loss which they properly deferred deducting on their returns until 1967 and 1968 when they had sufficient income to file returns. Respondent contends that the property in question was not a capital asset in petitioners' hands, but an asset of the type described in section 1231 of the Code [2] losses upon the disposition of which are ordinary in nature and required to be deducted, to the extent that there is gross income, in the year in which sustained. Since petitioners' gross income in 1965 was more than sufficient to absorb the loss in that year, no deduction of any kind is allowable in the years here at issue. *333 Section 1221 of the Code defines the term "capital asset" as any property held by the taxpayer, excluding however, "property used 41 in his trade or business, of a character which is subject to the allowance for depreciation * * * or real property used in his trade or business." With respect to "property used in the trade or business" of a taxpayer, section 1231 provides that while net gains on sales or exchanges of such property shall be treated as capital gains, net losses are not to be treated as capital losses, but as ordinary losses. The evidence presented to the Court is not complex. Simply stated, it shows that when petitioners moved from Ohio to California in 1961 they could not sell their residence in Ohio and therefore rented it to various tenants until May, 1965, when it was deeded back to the mortgagee because petitioners could no longer make the mortgage payments and did not desire the mortgagee to foreclose. It further shows that during the period 1961 through 1964 petitioners received rents of about two hundred dollars per month except for brief periods when the property was vacant. Their return for 1961 was examined by respondent and the tax basis for the property *334 agreed upon. Depreciation was claimed on the improvements during the period 1961 to 1964 and, after reducing basis by the amount of depreciation claimed, the difference between the adjusted basis and mortgage balance produced a loss of $3,611.24. In our view petitioners' activity in renting out the Sagecrest property for a fairly continuous period of four years between 1961 and 1965, at a substantial rental, together with the concurrent claiming on their income tax returns for these years of the expenses incurred in such rental activity, including depreciation, establishes the use of such property in a "trade or business." . We therefore find that the property in question was not a capital asset in petitioners' hands at the time of its disposition, but an asset of the kind described in section 1231. The loss sustained on the disposition of such an asset is an ordinary loss. Since such loss was sustained in 1965, when petitioners had gross income sufficient to entirely absorb it, no loss is allowable to petitioners in either 1967 or 1968. Reviewed and adopted as the report of the Small Tax Case Division. Decision will be entered for *335 respondent. Footnotes
1. The amount necessary to balance income with itemized deductions and exemptions for 1968.↩
2. "Sec. 1231. Property Used in the Trade or Business and Involuntary Conversions. (a) General Rule. - If. during the taxable year, the recognized gains on sales or exchanges of property used in the trade or business, plus the recognized gains from the compulsory or involuntary conversion * * * of property used in the trade or business and capital assets held for more than 6 months into other property or money, exceed the recognized losses from such sales, exchanges, and conversions, such gains and losses shall be considered as gains and losses from sales or exchanges of capital assets held for more than 6 months. If such gains do not exceed such losses, such gains and losses shall not be considered as gains and losses from sales or exchanges of capital assets. * * * (b) Definition of Property Used in the Trade or Business. - For purposes of this section - (1) General Rule. - The term 'property used in the trade or business' means property used in the trade or business, of a character which is subject to the allowance for depreciation provided in section 167, held for more than 6 months, and real property used in the trade or business, held for more than 6 months, which is not - (A) property of a kind which would properly be includible in the inventory of the taxpayer if on hand at the close of the taxable year. (B) property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business, or (C) a copyright, a literary, musical, or artistic composition, a letter or memorandum, or similar property, held by a taxpayer described in paragraph (3) of section 1221."↩